# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**ANTHONY DUANE MILLS**                                                  **PLAINTIFF**

**v.**                                            **CIVIL ACTION NO. 5:18-cv-15-DCB-MTP**

**TRAVIS PATTEN, ET AL.**                                            **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Motion for Summary Judgment [60] filed by Defendants Travis Patten, Lee Best, Delayne Bush, Walter Mingee, and Dustin Smith and the Motion to Withdraw Affidavits [70] filed by Defendants Lee Best and Delayne Bush. Having considered the record and the applicable law, the undersigned recommends that the Motion to Withdraw Affidavits [70] be denied, the Motion for Summary Judgment [60] be granted, and this action be dismissed with prejudice.

## BACKGROUND

On February 9, 2018, Plaintiff Anthony Duane Mills, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's complaint arise from events which allegedly took place during multiple arrests in Adams County, Mississippi. In his complaint and as clarified by his testimony at the *Spears* hearing,[1] Plaintiff asserts claims for monetary damages against Sheriff Travis Pattern, Lee Best, Delayne Bush, Walter Mingee, and Dustin Smith.

---

[1] *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Flores v. Livingston*, 405 Fed. App'x 931, 932 (5th Cir. 2010); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the compliant).

1

*November 17, 2016 Arrest*

According to Plaintiff, on November 17, 2016, he was sleeping at his grandmother's home when Adams County Sheriff's Deputies, Defendants Lee Best and Delayne Bush, came into the house and arrested him. Defendants Best and Bush claimed that they were arresting Plaintiff as a result of commitment proceedings and taking him to the state mental health hospital, but Defendants allegedly did not show Plaintiff any commitment papers or an arrest warrant.

Plaintiff claims that Defendants Best and Bush had no permission to search his grandmother's house, but during the arrest, Defendants searched and found a rifle behind the door to the bedroom where Plaintiff was sleeping. Defendant Bush allegedly stated that they were going to lie and say that Plaintiff pointed the rifle at them. Plaintiff, however, was not charged with pointing a rifle at Defendants. Instead, Plaintiff was later charged with and arrested for the crime of felon in possession of a weapon. Plaintiff claims the rifle was not his. According to Plaintiff, this charge was eventually dropped. Plaintiff was released from the state hospital on December 15, 2016.

*June 6, 2017 Arrest*

According to Plaintiff, in May of 2017, his ex-wife filed harassment charges against him. Plaintiff allegedly attempted to contact the Adams County Justice Court and Sheriff's Department to resolve the situation but was unable to contact anyone who could assist him. On June 6, 2017, Plaintiff was allegedly cleaning limbs and debris behind his house when a police "K9" officer bit him on the back of his leg, which resulted in two puncture wounds and a scratch. At that time, Adams County Sheriff's Deputies, Defendants Walter Mingee and Dustin Smith, came toward Plaintiff with their weapons drawn and arrested Plaintiff. As Plaintiff was being

2

escorted to the patrol car, Defendant Mingee allegedly threw pills on the ground at Plaintiff's feet, and Plaintiff began stomping them.

Plaintiff claims that Defendants Mingee and Smith arrested him without a warrant and used excessive force by sending the dog to attack him. Plaintiff also claims that Defendant Mingee falsely stated that Plaintiff possessed pills, but Plaintiff was not charged with a crime arising from the pills.

### *Defendant Sheriff Travis Patten*

According to Plaintiff, Defendant Sheriff Travis Patten, as the policymaker of the sheriff's department, could have stopped the deputies from wrongfully arresting and harassing him. Plaintiff claims that he complained to Sheriff Patten about his deputies' actions, but he did nothing to stop them. Plaintiff also alleges that Sheriff Patten made racist remarks toward him and has discriminated against him.

### STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgement will be granted when "the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000). The Court is not permitted to make credibility determinations or weigh the evidence. *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2001)). When deciding whether a genuine issue of fact exists, "the court must view the facts and

the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010).

However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner*, 476 F.3d at 343 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

In support of their Motion for Summary Judgment [60], Defendants submitted a transcript of the omnibus hearing; affidavits from Charlotte Bland and Defendants Patten, Bush, Best, and Mingee; records from the Adams County Chancery Court, an indictment of Plaintiff, and Plaintiff's jail file. Plaintiff filed a Response [65] to the Motion for Summary Judgment, and Defendants filed a Reply [69].

### *November 17, 2016 Arrest*

Considering first the events of November 17, 2016, Plaintiff alleges that Defendants Best and Bush arrested him without a warrant, conducted an illegal search, threatened to falsely accuse him of pointing a firearm at officers, and wrongfully charged and arrested him for possessing a firearm.

4

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Defendants, however, argue that they are entitled to absolute immunity for the November 17, 2016 arrest because—contrary to Plaintiff's assertions—the arrest was carried out pursuant to a court order. Defendants point to a "Writ to Take Custody for Mental Examination or Retention" issued by the Adams County Chancery Court on October 26, 2016. *See* State Court Records [64] at 7. Indeed, "[a]n official acting within the scope of his authority is absolutely immune from suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction." *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996). "Courts routinely find that sheriffs or constables acting within the scope of their authority are entitled to quasi-judicial immunity when serving or executing writs and are absolutely immune from suit for damages to the extent that the cause of action arises from compliance with a facially valid judicial order issued by a court acting within its jurisdiction." *Burgess v. Cox*, 2015 WL 5578009, at *4 (E.D. Tex. July 27, 2015).

Miss. Code Ann. § 41-21-67(1) provides as follows:

> Whenever the affidavit provided for in Section 41-21-65 is filed with the chancery clerk, the clerk, upon direction of the chancellor of the court, shall issue a writ directed to the sheriff of the proper county to take into custody the person alleged to be in need of treatment and to take the person for pre-evaluation screening and treatment by the appropriate community mental health center established under Section 41-19-31.

*See* Miss. Code Ann. § 41-21-67(1). Because Defendants arrested Plaintiff at the direction of the Adam County Chancery Court, pursuant to a facially valid writ, Defendants are protected by quasi-judicial immunity.

For the remaining claims arising from the events of November 17, 2016, Defendant raise the defense of qualified immunity. The United States Supreme Court has held that "government

5

officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Valdez*, 845 F.3d 580, 599-600 (5th Cir. 2016). A plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Id*. If the defendant did violate the plaintiff's constitutional rights, "the court then asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation and internal quotation marks omitted).

      Plaintiff claims that during his arrest, Defendants Best and Bush, without permission, searched the bedroom where he was sleeping and found a firearm behind the door to the bedroom. Defendants argue that Best and Bush did not perform an illegal search as the firearm was in plain view or, in the alternative, would have been discovered during a protective sweep. Again, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City*, 547 U.S. at 403. However, a well-recognized exception to the requirement of a search warrant is the "plain view" doctrine. *See Horton v. California*, 496 U.S. 128 (1990). Under this doctrine, an officer may seize an object without a warrant if the officer is lawfully in a position which enables him to view the object and the incriminating character of the object is immediately apparent. *Id*.

Another exception to the search warrant requirement is the right to search an arrestee incident to his lawful arrest. *Carroll v. United States*, 267 U.S. 132 (1925). "As to scope, an arresting officer may reasonably search for and seize objects on the arrestee's person, and 'the area within his immediate control.'" *Wright v. Edwards*, 343 F. Supp. 792, 798-99 (N.D. Miss. 1972) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Law enforcement officers may "perform cursory 'protective sweeps' of larger areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched." *United States v. Mata*, 517 F.3d 279, 285 (5th Cir 2008). "The protective sweep doctrine allows government agents, without a warrant, to conduct a quick and limited search of premises for the safety of the agents and others present at the scene." *United States v. Albarado*, 555 Fed. App'x 353, 357 (5th Cir. 2014).

Accepting Plaintiff's version of the facts as true, Defendants Best and Bush found a firearm behind the door to the bedroom where Plaintiff was located and arrested. As previously explained, Defendants Best and Bush were lawfully in the bedroom where they arrested Plaintiff.[2] Plaintiff does not allege that the firearm could not have been seen without a search. Plaintiff specifically alleged that "Bush noticed the weapon or whatever behind the door . . . ." *See* Transcript [60-1] at 23. Additionally, Plaintiff does not allege that the firearm was outside an area within his immediate control. Accordingly, Plaintiff has not established a constitutional violation stemming from the search of the room where he was arrested.

Plaintiff also alleges Defendant Bush threatened to falsely accuse him of pointing a firearm at officers. Plaintiff, however, admits that he was not charged with pointing a firearm at

---

[2] Defendants arrested Plaintiff pursuant to a writ issued by the Adam County Chancery Court. *See* [64] at 7.

7

the officers.  "A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation." *Citizen Action Fund v. City of Morgan City*, 154 F.3d 211, 216 (5th Cir. 1998).  Thus, Defendant Bush's alleged threat is not actionable under § 1983.

Although Plaintiff was not charged with threating officers with a firearm, he was eventually charged with and arrested for possessing a weapon as a felon.  The charge was dismissed in March of 2018, Plaintiff claims that he was wrongfully charged and arrested because the weapon did not belong to him and he did not have the firearm on his person.  Plaintiff alleges that Defendants falsely reported that he had the firearm on his person.

The Fourth Amendment protects an individual's right to "be free from police arrest without a good faith showing of probable cause." *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018).  "An official violates this right if he "swears[s] to false information in an affidavit in support of a search [or arrest] warrant, provided that: (1) the affiant knew the information was false or would have known it was false except for the affiant's reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information." *Blake v. Lambert*, 921 F.3d 215, 222 (5th Cir. 2019).

In a November 17, 2016 incident report prepared by Defendant Best, he stated as follows:

> I breeched the door way and observed Mills crouched behind a dresser.  As I approached Mills I could only see one hand and as I made it around the dresser, I observed a bolt action rifle in Mills left hand.  At the time Mills rose to his feet and grabbed the rifle with both hands, with one hand on the foregrip and one hand near the receiver.  I grabbed the barrel of the rifle and shoved it away from Deputy Gwin and myself.

*See* Report [60-8] at 47-48.

Defendants Best and Bush, however, submitted affidavits along with the Motion for Summary Judgment, stating that in the course of taking Plaintiff into custody, "a firearm was found in plain view in the room with and mere feet from Anthony Mills.  This was the basis of

8

the charge of possession of a firearm by a convicted felon." *See* Bush Affidavit [60-4]; Best Affidavit [60-5]. In his Response [65], Plaintiff argues that this inconsistency proves that Defendants "lied on their reports."

Along with their Reply [69], Defendants submitted an amended affidavit from Defendant Best stating as follows:

> During the course of taking custody of Anthony Mills on the aforementioned date, I entered a bedroom and found Anthony Mills behind a dresser. When Mills rose to his feet, I observed a firearm in his hands(s). This was the basis for the charge of possession of a firearm by a convicted felon. In a prior affidavit, I noted that the firearm was mere feet from Plaintiff; however, that was incorrect. I personally observed the firearm in Mills' hands.

*See* Amended Affidavit [69-1].

On June 5, 2019, Defendants Best and Bush filed a Motion [70], seeking to withdraw the affidavits submitted along with the Motion for Summary Judgment. According to Best and Bush, they reviewed and refreshed their memories of the incident on November 17, 2016. The undersigned recommends that the Court deny the Motion to Withdraw Affidavit [70] and consider all the affidavits submitted by the Defendants.

There are inconsistencies in Defendants' statements concerning Plaintiff's possession of a firearm. However, it is irrelevant whether the firearm was in Plaintiff's hands or mere feet from Plaintiff as either supports Plaintiff's charge and arrest for possession of a firearm by a convicted felon. *See McGlothin v. State*, 238 So. 3d 1, 4 (Miss. App. 2017). Pursuant to Miss. Code Ann. § 97-37-5(1), it is unlawful for a convicted felon to possess a firearm. "Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent. Constructive possession is established by evidence showing that the contraband was under the dominion and control of the defendant." *Roberson v. State*, 595 So. 2d 1310 (Miss.

9

1992); *see also Anderson v. State*, 16 So. 3d 756, 759 (Miss. App. 2009) (finding there was sufficient probable cause for arrest after officers saw a firearm on a table near a convicted felon).

Accepting Plaintiff's version of the facts as true, there was probable cause to arrest Plaintiff for possession of a weapon by a felon. Accordingly, Plaintiff has not established a constitutional violation.

### *June 6, 2017 Arrest*

Turning to the events of June 6, 2017, Plaintiff alleges that Defendants Mingee and Smith arrest him without a warrant and used excessive force by sending a dog to attack him. Plaintiff also alleges that Defendant Mingee falsely stated that Plaintiff possessed pills of some type. Defendants Mingee and Smith argue that they are entitled to absolute immunity for the arrest because it was carried out pursuant to a capias issued by the Adams County Circuit Court on June 6, 2017. *See* Capias [60-8] at 156. As previously explained, officers are immune from suit for damages to the extent that the cause of action arises from compliance with a facially valid judicial order issued by a court acting within its jurisdiction. *See Mays*, 97 F.3d at 113. Because Defendants arrested Plaintiff at the direction of the Adam County Circuit Court, pursuant to a facially valid capias, Defendants are protected by quasi-judicial immunity.

Plaintiff also claims that Defendants Mingee and Smith used excessive force on him when they, without warning, released a police dog which bit him on the back of his leg. Defendants argue that Plaintiff suffered no more than *de minimis* injuries and that they are entitled to qualified immunity.

A plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Anderson*, 845 F.3d at 599-600. Plaintiff's claim is based on his Fourth

10

Amendment right to be free from excessive force during a seizure. *See Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009).[3] Specifically, Plaintiff's claim is based on his right to be free from excessive force in the course of a seizure brought about by a police dog that was deployed without a verbal warning.

Courts have discretion to skip the first inquiry and resolve a case solely on "clearly established" grounds. *Pearson v. Callahan*, 555 U.S. 223, 240 (2009). At this stage, courts must determine whether the right at issue was clearly established at the time of the incident. *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*. A plaintiff's burden of demonstrating that defendants violated clearly established law requires more than a citation to generalized principles of law; it requires specific authority which places "the statutory or constitutional question confronted by the official beyond debate." *Id*. (citation and internal quotations omitted). Courts "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011).

---

[3] To make out a Fourth Amendment excessive force claim, a plaintiff must establish "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Conner*, 490 U.S. 386, 396 (1989). The reasonableness of the force used is determined by considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The force used "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id*.

On December 27, 2016, the Fifth Circuit decided *Cooper v. Brown*, 844 F.3d 517 (2016), which addressed the issue of what constitutes reasonable use of "K9" force during an arrest. After *Cooper*, "the law is clearly established that when no reasonable officer could conclude that a suspect poses an immediate threat to law enforcement officers or others, it is unreasonable to use K9 force to subdue a suspect who is complying with officer instructions." *Shumpert v. City of Tupelo*, 605 F.3d 310 (5th Cir. 2018) (citing *Cooper*, 844 F.3d at 523).

Although *Cooper* is controlling authority on the use of K9 force, the facts which the Fifth Circuit confronted in *Cooper* differ in a critical way from the facts alleged in this case. Unlike *Cooper*, the plaintiff in this case does not allege that he experienced a prolonged, vicious attack or that the use of a K9 continued after he was subdued and demonstrated compliance. *Cooper* does not address the issue in this case: whether any use of K9 force to subdue a suspect without warning is unreasonable.

Courts have grappled with the issue of whether an officer's failure to warn before using K9 force violates the Fourth Amendment. Some court have held that a failure to warn violates the Fourth Amendment. In *Vathekan v. Prince George's Cnty.*, the Fourth Circuit stated that "[w]e hold that it was clearly unreasonable for a police officer to fail to give a verbal warning before releasing a police dog to seize someone." 154 F.3d 173, 175. In *Kuha v. City of Minnetonka*, the Eighth Circuit concluded that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender." 365 F.3d 590 598 (8th Cir. 2003).[4]

---

[4] *Kuha* was overruled on other grounds in *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007).

Additionally, district courts within the Fifth Circuit have held that it is unreasonable to use K9 force, without warning, against a non-threatening suspect. *See*, *e.g.*, *Stranjac v. Jenkins*, 2012 WL 3862377, *10 (M.D. La. Sept. 5, 2012) ("it was objectively unreasonable for [the officer] to release [the K9] without sufficient warning when [the suspect] was standing by officers with guns drawn, and making no attempt to flee or to actively resist arrest."); *Malone v. City of Fort Worth*, 2014 WL 5781001 (N.D. Tex. Nov. 6, 2014) ("[officer's] undisputed failure to warn [the suspect] before releasing the dog and before lifting the dog up to where it could bite [the suspect] also precludes judgment for [the officer] on the basis of qualified immunity"); *Calton v. City of Garland*, 2004 WL 2965005, at *3 (N.D. Tex. Dec. 10, 2004) ("a failure to issue such a warning can state a constitutional violation."). In those cases, however, the officers used K9 force after the suspects had indicted that they were surrendering. That allegation is not present in this case.

Moreover, "circuit and district courts in other circuits have held that, where there is a risk that a suspect might escape or where officer safety is at issue, an officer's failure to give a verbal warning before releasing a police dog does not render his use of force objectively unreasonable" *Escobar v. Montee*, 2016 WL 397087, at *7 (N.D. Tex. Feb. 2, 2016) (citing *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1321 (10th Cir. 2009) ("A warning is not invariably required even before the use of deadly force, let alone here, where the release of the dog was nondeadly force used in the face of an imminent threat."); *Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009) (acknowledging that, although there was no verbal warning before the police dog was released, suspect did not and could not credibly argue that warning would have made a difference and there was no real opportunity to warn because the fleeing suspect made a last-second surrender); *Grimes v. Yoos*, 298 Fed. App'x 916, 923-24 (11th Cir. 2008) (holding that officer's failure to

13

warn did not render use of police dog objectively unreasonable because department's manual made warning discretionary where warning would "allowing the offender to escape," and officer was concerned about potential flight of suspect); *McCay v. City of Hayward*, 949 F. Supp. 2d 971, 984 (N.D. Cal. 2013) (concluding that the law was not clearly established that officers were required to give warning before putting dog over fence in order to apprehend fleeing armed suspect); *Fallis v. Sasaki*, 2011 WL 111724, at*12 (W.D. Wash. Jan. 13, 2011) (granting summary judgment based on qualified immunity "on the narrow issue of failure to warn" because, at the time of plaintiff's arrest, "no right to warn of [dog]'s use had been clearly established,"); *Pace v. City of Palmetto*, 489 F. Supp. 2d 1325, 1335 (M.D. Fla. 2007) ("even assuming [officer's] use of [dog] and failure to give verbal warning rendered his use of force objectively unreasonable, it was not "clearly established" at the time of the incident that using K9 force under the circumstances to apprehend a fleeing felon without a verbal warning was in violation of the Fourth Amendment.")).

Along with the Motion for Summary Judgment, Defendant Mingee submitted an affidavit stating that "the use of a K9 unit was appropriate because of the nature of Anthony Mills' charges and his history of firearm possession, as well as the circumstances of his arrest, as he was in a wooded area and likely to flee." *See* Mingee Affidavit [60-6]. In this case, the undersigned cannot conclude that, under the circumstances alleged, it was clearly established that Defendants' use of K9 force, without warning, was unconstitutional. Accordingly, Defendants Mingee and Smith are entitled to qualified immunity for Plaintiff's excessive-force claim.[5]

---

[5] Plaintiff also alleges that Defendants Mingee and Smith approached him with their weapons drawn. "The Fifth Circuit has held in other contexts, however, that the brandishing of a gun by a law enforcement officer, by itself, is insufficient to state a claim of excessive force or violation of any constitutional right." *Taylor v. Tanner*, 2013 WL 5781707, at *3 (E.D. La. Oct. 23, 2013). *Jones v. Caldwell Corr. Ctr.*, 2016 WL 7241567, at *2 (W.D. La. Oct. 24, 2016).

Plaintiff also alleges that Defendant Mingee falsely stated that Plaintiff possessed pills. Mingee denies Plaintiff's allegation and asserts that Plaintiff was not charged with any crime relating to the pills. Plaintiff admits that he was not charged with any crime relating to the pills. Thus, accepting Plaintiff's allegation as true, Mingee's statement amounted to a threat, which does not rise to the level of a constitutional violation. *See Citizen Action Fund*, 154 F.3d at 216 ("[a] section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation"). Thus, Defendant Mingee's alleged statement is not actionable under § 1983.

### *Defendant Sheriff Travis Patten*

Finally, Plaintiff alleges that Sheriff Patten could have stopped the deputies from arresting and harassing him but failed to do so and alleges that Sheriff Patten made racial remarks to him. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (citations omitted). "A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Plaintiff does not allege that Sheriff Patten personally participated in the incidents of November 17, 2016 and June 6, 2017. To establish liability of a supervisory official under § 1983, Plaintiff must show that: "(1) [Sheriff Patten] failed to supervise or train the officer[s]; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Id*. (citations omitted). Plaintiff has failed to

demonstrate that Sheriff Patten implemented unconstitutional policies that caused a constitutional violation, or that he acted or failed to act with deliberate indifference.

Concerning Sheriff Patten's alleged racist remarks, "allegations of verbal abuse or threats, or use of language that indicates racial bias, do not state a cause of action under the Constitution." *Escamilla v. Doe*, 2008 WL 190321, at *2 (E.D. Tex. Jan. 18, 2008) (citing *Bender v. Brumley*, 1 F.3d 271 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983)). Accordingly, this claim fails as a matter of law.

## RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that:

1. The Motion to Withdraw Affidavits [70] be DENIED;
2. The Motion for Summary Judgment [60] be GRANTED; and
3. This action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject, or modify in whole or in part the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This the 2nd day of December, 2019.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge